RENDELL, Circuit Judge,
dissenting:
The majority’s conclusion that the conduct in this case was, without doubt, objectively reasonable and not excessive based upon plaintiff’s chilling tale runs counter to our Fourth Amendment jurisprudence as most recently explicated in Baker v. Monroe Township, 50 F.3d 1186 (3d Cir.1995)—relied upon by the district court but not mentioned in the majority’s opinion — and Sharrar v. Felsing, 128 F.3d 810 (3d Cir.1997). I must part company with my colleagues because I agree with the district court’s well-reasoned determination that the issue of reasonableness of the marshals’ conduct under the circumstances of this case is properly a question for the jury.
In Baker, we addressed conduct similar to the marshals’ actions here, namely, the point *126 ing of guns, as well as the use of handcuffs, stating that the use of this type of force must be justified by the circumstances. We noted that “we must look at the intrusiveness of all aspects of the incident in the aggregate.” 50 F.3d at 1193. Baker involved a police stop and detention of three individuals entering a residence while the police were conducting a drug raid. The police stopped them, pushed them down to the ground with guns drawn, and handcuffed and detained them for 15-25 minutes. We reversed the district court’s grant of qualified immunity because there was sufficient evidence from which a jury could find a Fourth Amendment violation. The police in Baker admitted that the use of handcuffs would have been “inappropriate” until there was an arrest. We assessed the police conduct in the following terms:
Here, accepting the Bakers’ testimony, the police used all of those intrusive methods without any reason to feel threatened by the Bakers, or to fear the Bakers would escape ... the appearances were those of a family paying a social visit ... there is simply no evidence of anything that should have caused the officers to use the kind of force they are alleged to have used.
Id. Similarly, in this case, defendant Heemer himself testified in his deposition that pointing a gun at an unarmed person was “absolutely” inappropriate conduct. Further, the marshals encountered a peaceful scene with no indication of resistance or force on the part of the Mellotts, and there is no evidence of anything that should have caused them to use the force indicated here.
The majority distinguishes the instant situation on the basis of the threat to the safety of the officers. However, in reality, a jury might well determine that the likelihood of violence toward the marshals was not so great, given the context of the incident discussed below, and the fact that the only person who had witnessed aggressive behavior on the part of the Mellotts was an agent of the Farmers Home Administration who had been chased off the farm property by Mellott in a pickup truck.
The court’s opinion fails to note a few facts which could color a jury’s view of the overall atmosphere and context of the incident in question. First, the Mellotts had made themselves notorious for their litigious ways, and they, along with other farmers being counseled by the same advisor, were suing the Farmers Home Administration. This fact was not lost on the marshals effecting the evictions. Nor, I would imagine, were they unaware that the Mellotts were testing the patience of various federal agencies.[1] Furthermore, whatever fear the marshals had to cause them to descend on the Mellott farm with guns blazing was immediately dissipated when they encountered a pastoral scene of several people sitting peaceably in a parlor. While it might have been reasonable for the marshals to approach and enter the home in an aggressive mode, the clearly passive conduct of those present should have caused them to adjust their response to the situation accordingly. Officer Heemer testified specifically that Wilkie Mellott assured him that no one else was in the house and since they knew the marshals were coming, he had removed the guns. The force used thereafter was not clearly, objectively reasonable, and, given our precedent in Baker as a guide, the jury should be the judge of this conduct. I also disagree with the majority’s view that Jackie Wright’s Fourth Amendment rights were not violated as a matter of law as he accompanied the marshals to Kirk Mellott’s house, notwithstanding having a gun in his back and being told he would be first to go down if anything went wrong. I find this situation as presenting at least an arguable seizure, depending upon whose version of the facts the jury believes.
Although the majority analogizes this situation to Sharrar, I submit that the facts in that case are quite different. Sharrar involved the propriety of the arrests of individuals wanted for assault, holed up in a home in an otherwise peaceful seashore community, and the extent of force employed by teams of law enforcement personnel in surrounding the residence and effecting the arrest of these individuals. The majority in Sharrar stated that the Rambo-type behavior under the circumstances came “close to *127 the line,” although not constituting a Fourth Amendment violation. 128 F.3d at 822.
Here, where seven marshals detained and terrorized a family and friends, and ransacked a home, while carrying out an unre-sisted civil eviction, their conduct, which could be described as Gestapo-like, is even closer to the line, if not over the line. We should not cloak it in the protective veil of immunity at the summary judgment stage. Just as in Baker, where we reversed summary judgment granting qualified immunity so that a jury could judge the objective reasonableness of the police conduct, here we should affirm the excellent reasoning of the district court, following our precedent in Baker, that genuine issues exist as to the reasonableness of the marshals’ behavior. The matter should proceed to trial on the issue of the alleged violations of the Fourth Amendment rights of all of the plaintiffs and the marshals’ entitlement to qualified immunity. I would affirm.

. Mrs. Mellott testified that the bankruptcy judge said he would “make an example” of them.